JOHN O'DEA, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Criminal Law:** DESTROYING BRIDGE: EVIDENCE. On trial under an indictment for maliciously cutting down and destroying a public bridge on a public highway, it is competent for the state to prove, by the records of the county commissioners' court, the establishment of the highway on which the bridge was constructed, and also by such records and the records of the district court, that the accused presented and prosecuted his claim for damages resulting from such location, and that he received and accepted the damages awarded him by the trial jury in the district court.

2. **Roads:** ESTABLISHMENT OF: ESTOPPEL. When a county road is established by the proper tribunal under the forms of law and the road is declared duly established, and a land owner over

18

whose land the road is located presents his claim for damages, prosecutes it to a final hearing and accepts and receives the compensation awarded him in full of such damages, he is thereby estopped to deny the due establishment of the road.

3. ———: VACATION. By section three of chapter fifty-eight, Compiled Statutes, a public road is deemed vacated if not used within five years. But the abandonment by the public must be complete and entire in order to work a vacation.

4. Trial: CONFLICTING EVIDENCE. Where evidence is conflicting the jury are the judges of its weight and their verdict will not be molested in such case unless it is clearly wrong.

5. Bill of Exceptions. Where documentary evidence is excluded by the trial court, if such exclusion is sought to be assigned in the supreme court as error, the excluded evidence must be preserved by the bill of exceptions. Error cannot be presumed.

6. Instructions examined and the ruling of the court *Held*, Not erroneous.

ERROR to the district court for Washington county. On trial below before NEVILLE, J., the following instructions were given, to which the defendant excepted:

"2d.   Before you can convict you must be satisfied from the evidence beyond a reasonable doubt of the truth of the following propositions:

"1. That the bridge in question was a public bridge.

"2. That the road upon which it was placed was a public road at the time of the alleged destruction.

"3. That the said road was properly established by the proper legal authorities, or was a public road by user, and was such public road at the time of the alleged destruction.

"4. That the defendant John O'Dea willfully and unlawfully and maliciously did cut and destroy the said bridge with intent to injure the same.

"3d. If you shall be satisfied beyond a reasonable doubt that the portion of the road on which the bridge was placed had been totally abandoned as a public road for a period of five years next prior to the establishing and placing

thereon the bridge in question, then it ceased to be a public road and no conviction can be had.

"4th. If the portion of the road upon which the said bridge alleged to have been destroyed was placed, had not been totally abandoned as a road for a period of five years next prior to the destruction charged against the defendant, then you may find that said part of the road was a public road, provided you further find that the said road was in the original instance properly established, or has been in public use for a period of ten years next prior to the alleged destruction of said bridge.

"5th. You are instructed that the county commissioners had no authority to vacate the road in question unless there was first filed in the proper office the petition required by law properly published or posted, and any order they might make without first filing the petition and the publication or posting of the required notice would not vacate said road.

"6th. You may, in endeavoring to learn whether or not the defendant knew the bridge was a public one and located upon a properly established public road, that the defendant received damages from the county of Washington for the land taken to constitute the part of the road upon which the bridge was located.

"7th. You are instructed that a public road may be properly established by user, and if the county attempted to establish the road in question and their proceedings were void, yet if the said road or the part thereof upon which the bridge was located was used as a public road, with the knowledge of the defendant for the term of ten years just prior to the alleged destruction of said bridge, then the said road was properly established."

*Ballard & Walton,* for plaintiff in error, cited: *Robinson v. Mathwick,* 5 Neb., 252. *State, ex rel. Sims, v. Otoe County,* 6 Id., 129. *Doody v. Vaughn,* 7 Id., 28. *State*

*v. Tucker*, 36 Iowa, 485.    *State v. Green*, 41 Iowa, 693.
Plaintiff in error having been deceived and misled by the
county authorities he is not now estopped from asserting
the truth, and saying there is no road there.    Bigelow on
Estoppel, part 3, 387.    *Douglas v. Scott*, 5 Ohio, 198.
*Price v. Johnston*, 1 O. S., 390.    *Clark v. Coolidge*, 8 Kan.,
189.    *Ayres v. Probaser*, 14 Kan., 190.    *Lucas v. Hart*,
5 Iowa, 415.

*Isaac Powers, Jr., Attorney General*, for the State, cited:
*Reese v. Chicago*, 38 Ill., 322.    *In re Wells County Road*,
7 Ohio State, 16.

REESE, J.

The plaintiff in error was indicted by the grand jury of
Washington county for maliciously cutting down and de-
stroying a public bridge in said county.    From a judgment
of conviction he prosecutes error in this court.

On the trial the state introduced certain documentary
evidence, consisting of the proceedings in the matter of the
location of the highway upon which the bridge in question
was erected.    It is claimed by plaintiff in error that the
court erred in admitting these records, as they do not prove
the legal establishment of the road.    The records show,
among other things, that the plaintiff in error, being the
owner of the land on one side of the road sought to be es-
tablished, filed his claim for damages, a commission was
appointed to assess the same, and a report was made allow-
ing him fifty dollars.    This sum was allowed him by the
county board, and from this allowance he appealed to the
district court.    The cause was tried in that court, and a
judgment for one hundred and eighty-five dollars was ren-
dered in his favor, which was paid and full satisfaction
thereof was entered.    We think the evidence was compe-
tent, and there was no error in its admission.

It is claimed that the board of county commissioners had

no jurisdiction of the subject matter, and that their acts were void for the reason that no notice was given of the proceedings to establish the road as required by law. We fail to observe any such irregularities in these proceedings as would render them void, and also fail to find that "no notice had been given," as claimed by plaintiff in error. But the record shows beyond question that he did demand and receive pay for the land taken by the road, as well as his damages growing out of its location. It seems to us that he cannot now be heard to deny the validity of the proceedings in its establishment. He cannot be heard to say there is a road and because of the road he will demand and receive $185, and after receiving the money say there is no road and because there is none he will cut down the bridges placed thereon at public expense. *In the matter of the Wells County Road,* 7 Ohio State Rep., 16. *Reese v. Chicago,* 38 Ill., 322.

It is next claimed that "If this so-called road was ever legally established, it was by the act of 1879 vacated; and this was long before the bridge in question was built." That part of the act of 1879 referred to is as follows:

"Sec. 3. All roads within this state which have been laid out in pursuance of any law of this state or of the territory of Nebraska, and which have not been vacated in pursuance of law, are hereby declared to be public roads; *Provided,* That all roads that have not been used within five years shall be deemed vacated." Comp. Stat., ch. 78.

It will be observed that the most that can be claimed for this section is, that roads that have *not been used* within five years shall be deemed to be vacated or abandoned by the public. It will not do to say that if any part of a road has not been used the whole road "shall be deemed vacated," neither will it do to say that if for five years the line of travel is deflected from a part or small portion of a road by reason of some local difficulty, that the unused portion "shall be deemed vacated." In order to vacate a road by

non-user there must be a clear and entire abandonment of the road by the public for the statutory period. In the language of the statute, in order to its vacation it must "have not been used within five years." Officers and courts cannot inquire into the extent of the use, whether used much or little by the public. If used at all, the road will not "be deemed vacated." Some of the witnesses testified on the trial that the road had not been used for more than five years. Others testified that it had been used within that time. One witness testifies that he has known the road thirteen years. A part of his testimony is as follows:

Q. State whether or not this is used as a public thoroughfare, and has been during all these years?

A. It is used for travel all the time, that is from the Rockport road. Mr. O'Dea and Mr. John Kelley uses that end. Sometimes when one of us goes to see one of them we use it. On the other end Mr. Neale has used it, and I have used it some. There is a swamp about one hundred yards long there; most of them don't go that road; both ends of that road have been used about thirteen years. The new bridge was at the corner of sections thirty and twenty-nine, and about fifteen rods south of the corner stone. Some time ago there was a little bridge there, but that big gulch washed through.

Q. In the place where the new one is now?

A. Pretty near the same place. It could not miss it ten feet, I think.

Another witness testified as follows: "I reside alongside the road in question; I know this road; it has been used for travel since 1871."

Q. Has there been any break in the travel on that road by the people abandoning it?

A. Not at all, only sometimes when the people could not travel it.

Q. Do you know the bridge in question?

A.   Yes, sir.

Q.   Do you know this place marked out on the plat as the bluff?

A.   Yes, sir.   There you leave a straight line to get past the bluff.

Q.   Is that the only turn in the road?

A.   Yes, sir.

Q.   What effort, if any, has been made, to your knowledge, to put that old road in condition?

A.   I myself have repeatedly seen the commissioners to have that road put in condition at the gully and across the swamp.

Q.   Where the new bridge in question was established, do you know of any other means of getting across that gully prior to that time, and if so what was it?

A.   A bridge with round stringers, if I recollect right, and covered with plank.

Q.   Do you know where this new bridge was constructed by the commissioners of this county?

A.   Yes, sir, I do.

Q.   Where was that bridge placed as to the one you have just spoken of?

A.   As near to the old one as you could guess.   It was within a few feet.

\*          \*          \*          \*          \*          \*          \*

Q.   Just refer to that plat and state how much of that road has been in use and for what length of time, by what class of people, and for what purpose?

A.   Commencing at the county line between Washington and Douglas counties, the whole length of that road has been traveled, except we diverged from a straight line to the east instead of to the west.   From the county line, part of the way, it was laid out by the joint action of Douglas county and Washington county commissioners.   It runs north almost to the section line and then turns east to get around the bluff, about thirty rods to the east, and then

comes back to the line.    The change that has been made is, that it turns to the west at that same point instead of to the east, about forty or fifty rods, close to the corner between sections nineteen and twenty, about thirty rods south of the center between nineteen and twenty.    There is a road all the way up and then up the old river bed that has been traveled for the last nineteen or twenty years.

The foregoing evidence, if true, shows such a continued use by the public as would prevent the vacation of the road by non-user.    The question of the weight of evidence was for the jury.    Their verdict on questions of fact will not be molested unless clearly wrong.    There was sufficient evidence to sustain the verdict on that point.

The next point to which our attention is called by plaintiff in error is, that the court erred in excluding certain documentary evidence offered by him in his defense.    The proposed evidence is not made a part of the bill of exceptions, and is not set out in the transcript.    The presumptions are in favor of the correctness of the proceedings in the district court.    Error must affirmatively appear.    It does not so appear.

Objections are made to certain instructions given to the jury by the court on its own motion, but the plaintiff's brief fails to point out where or how the court erred in giving said instructions.    We have examined them and fail to find wherein they are open to criticism.    In our opinion they are fully as favorable to the plaintiff in error as he could reasonably demand.

Plaintiff in error requested the court to give the following instruction: "If the jury believe from the evidence that the defendant demolished, cut down, or destroyed the bridge in question, and you further find that defendant believed at the time that no county road was in existence where the bridge was erected, and that the same was erected on defendant's land, and the defendant believed at that time that he had a lawful right to take and destroy said

bridge then you must find the defendant not guilty." This was refused, and the defendant excepted to such refusal.

The testimony all shows that one-half of the bridge was on the land of plaintiff in error, and the other half on the land of John Kelley; that he knew a road had been established there and he had received compensation therefor; that the county had caused the bridge to be constructed on the line of the road, and that the bridge was on said line; that he had threatened to cut it down, and had solicited others to help him do so and they had refused. It is not claimed and it cannot be claimed from the evidence that he was ignorant of any of the facts in the case. He is conclusively presumed to know the law. There was no evidence upon which to base this instruction, and it was properly refused. The second instruction given by the court on its own motion fully and clearly stated the law of the case on that point.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.