40 NEBRASKA REPORTS. [Vol. 103

State, ex rel. Jensen, v. Omaha & S. I. R. Co.

STATE, EX REL. P. C. JENSEN ET AL., APPELLEES, v. OMAHA
& SOUTHERN INTERURBAN RAILWAY COMPANY,
APPELLANT.

FILED DECEMBER 26, 1918. No. 20155.

1. **Railroads:** CROSSING: STATE RAILWAY COMMISSION: POWERS. In a certain sense the railway commission has jurisdiction concerning the crossing of a railway by a public highway. It may in reason prescribe the method in which the crossing shall be made, but it has no power to determine whether or not the highway shall extend across the right of way. The right to determine whether a highway shall extend across a railroad belongs to the county board.

2. **Eminent Domain:** PROCEEDINGS: OBJECTIONS. Objections that there is no legally established highway connecting with the road petitioned for, that there is no necessity for the condemnation, or that the road is sought to be established merely as a driveway for scenic purposes, should have been presented to the county board at the date set for filing objections, and come too late after the road has been established and when it is sought by mandamus to compel the construction of a highway crossing.

3. ———: DAMAGES: OBJECTIONS. This principle also applies to the contention that the damages allowed were inadequate, and that the construction of an overhead crossing by the railroad company would greatly exceed the amount of the damages allowed. The claim for damages should have been presented to the county board, and if the allowance was unsatisfactory, an appeal might have been taken.

Appeal from the district court for Sarpy county: JAMES T. BEGLEY, JUDGE. Affirmed.

John L. Webster and William R. King, for appellant.

Elmer S. Nickerson, William R. Patrick and E. H. McCarthy, contra.

LETTON, J.

This is a proceeding in mandamus brought by the road overseer of district No. 3, in Sarpy county, against the defendant, an interurban railway company, to compel the building of a bridge over the defendant's track

where it is alleged a public road crosses a deep cut on the railroad line. The petition alleges in detail the proceedings for the location and opening of a road 50 feet wide across the right of way, the final establishment of the road and the refusal of respondent to construct a crossing over its tracks.

The respondent answered that the facts alleged in the petition did not justify the issuance of the writ; that the writ is too vague and indefinite, and does not advise the character or material out of which the bridge was to be constructed; that the proposed road is not a public highway, but intended for pleasure riding or driving, and terminates at a point where there is neither a town, city or village, and that neither the county commissioners, nor the court can compel the respondent to erect a bridge for a road to be used only as a pleasure road for driving, and that if required to construct a proper steel structure of sufficient strength to be safe for public travel, it will cost respondent $4,500, for which there has not been awarded adequate damages.

After a hearing, the court awarded a peremptory writ of mandamus. Respondent appeals.

The brief of appellant assigns five errors. The first three of these assignments are based upon the alleged invalidity of the proceedings had in 1909 to establish the "Boulevard Road." The others are, that the writ did not specify the character of the bridge to be constructed, and that the railway commission, or the court alone, has jurisdiction in the matter.

The first point argued is that, after a legal highway has been established, application for a railroad crossing should be made to the railway commission. Several cases are cited in which language is used implying that the railway commission has jurisdiction as to railway crossings over highways. This is true in a certain sense. If crossings were about to be built in such a manner as to jeopardize the running of trains, or to affect the convenience or safety of operation of the

railroads, there can be no doubt that the railway commission would have power to require a different method of crossing to be installed. But it has no power to determine whether or not a highway shall extend across the right of way of a railroad company. This is the function of the county authorities. To give the commission such power would allow it to veto the opening of any public highway which crossed the right of way of a railroad. Neither the constitutional amendment creating the commission, nor the statute defining its powers, confers such authority upon it.

Some years ago a road was established leading from Omaha to Bellevue running along the crest of a ridge near the Missouri river, and descending from the ridge to the lower land occupied by a portion of the village of Bellevue, south and westward of the respondent's right of way. This is known as the "Boulevard Road." The railway line cuts through this ridge at a point north of the west portion of the village, and in order to reach the northwest portion of the village and the college buildings by this road, it was necessary to follow it from the ridge to the low lands, pass through a portion of the village, across the track on one of the streets leading westward, and return up the hill toward the north and west. The buildings of Bellevue College lie almost directly south of the proposed bridge, and are contiguous to the road of which the new road forms a part.

In 1909 a petition was presented to the county board asking for the establishment of a county road 50 feet wide, commencing at a point on the Boulevard Road mentioned, crossing the railroad and terminating at or near the intersection of Nineteenth avenue and Wayne street in the village of Bellevue. Waivers of damages were filed, and the road was located and established. The respondent did not file its consent, and in 1915 proceedings were had in due form to open a highway across the right of way and thus complete the road. Damages

in the amount of $100 were allowed respondent and directed to be paid from the funds of the county. So far as the record shows no objections were made by respondent to the establishment of the road and no appearance made by it at the hearing.

If there was no legally established highway connecting with the road petitioned for across the right of way, and no necessity for the condemnation, as respondent now asserts, it should have appeared and objected on this ground when the establishment of the latter road was under consideration by the county board. It is too late to raise this question now. Neither can the cost of the bridge be considered. This goes to the question of damages. If the amount of damages allowed by the appraisers and county board was insufficient, an appeal might have been taken.

It is said the county board had no jurisdiction to establish this road as it is a mere pleasure drive. The discretion of the county board in the establishment of the road cannot be attacked in this collateral manner. This question also should have been raised at the hearing.

The judgment of the district court is

AFFIRMED.

ROSE, J., not sitting.